NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 8, 2014
Decided July 23, 2014

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 13-2446

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 12 CR 437-1 |
| ROGELIO PEREZ, *Defendant-Appellant*. | Charles P. Kocoras, *Judge*. |

**O R D E R**

Rogelio Perez was sentenced to 188 months' imprisonment after pleading guilty to distributing crack cocaine. He argues that the sentencing court committed four procedural errors: applying a presumption of reasonableness to the guidelines range, basing the sentence on erroneous information, ignoring two of his principal arguments in mitigation, and not adequately explaining the sentence. Although we are confident

that the experienced trial judge was under no illusions about his ultimate sentencing discretion, we find ourselves unable to assess the reasonableness of the sentence based on the explanation the judge offered for it. We thus vacate the sentence and remand for further proceedings.

## I

In 2008 the Chicago Police Department and the FBI began investigating members of Perez's gang, the Imperial Gangsters, for drug and firearms offenses. Perez was caught in the net: between March and July 2010, he sold an informant approximately 370 grams of crack. During one of the sales in April, the informant asked Perez if he also had "some toys" for a customer, and Perez sold him one gun in addition to the crack. In June 2012 the FBI arrested Perez and seized 121 grams of heroin he intended to deliver to the informant. He was charged with seven counts of distributing drugs, 21 U.S.C. § 841(a)(1), and one count of possessing a firearm as a felon, *id.* § 922(g)(1).

Pursuant to a written agreement, Perez pleaded guilty to one count of distributing crack. He also stipulated to the conduct underlying the other counts in the indictment and agreed that he is a career offender for purposes of U.S.S.G. § 4B1.1. The parties anticipated a total offense level of 31 (a base offense level of 34 less 3 levels for acceptance of responsibility, see U.S.S.G. §§ 4B1.1(b)(2), 3E1.1) and a criminal-history category of VI, yielding a guidelines imprisonment range of 188 to 235 months.

The probation officer agreed with the parties' calculations. Perez's criminal history includes state convictions for selling crack in 1995, robbery and aggravated battery in 1997, and aggravated robbery in 2000. All of these crimes are predicates for career-offender status. See U.S.S.G. § 4B1.1(a). Perez conceded that the range was 188 to 235 months, but he asserted that something between 72 to 96 months would be sufficient punishment because his prior convictions were remote in time and involved only small drug sales.

The district court imposed a sentence of 188 months. The judge signaled his awareness of the advisory nature of the guidelines in several ways. He noted that in the past he had "ignored the Guidelines when [he] thought it was appropriate" but that leniency would "not be the order of the day" in Perez's case, because he believed that a below-range sentence would "dishonor the integrity the law commands." The court added that Perez's failure to change his life after his earlier stints in prison outweighed his status as a father and his tumultuous upbringing. Perez had "earned his career criminal status," the court said, "whether it was long ago or more recent and whether the deals were small." And Perez had been "at the ready" in this case, the court continued, to "sell drugs, sell crack and sell *guns*" to the informant. Thus, the court concluded, "the Guidelines call it the right way," and a sentence of 188 months was "appropriate … under all of the 3553 factors."

## II

Perez argues that the sentencing court committed four procedural errors: (1) according the guidelines range a presumption of reasonableness; (2) basing the sentence on inaccurate information; (3) overlooking Perez's principal arguments in mitigation; and (4) failing adequately to explain his chosen sentence. Although we find no merit in arguments (1) and (3), we are unable to rule out the possibility that Perez's sentence was based on an inaccurate view of the record. We thus look briefly at the aspects of the case for which we reject a claim of error, and then turn to the remainder.

Presumption of Reasonableness. Perez bases this argument on a few stray remarks that the district court made during the sentencing hearing. At one point the judge commented, "I just cannot do anything conscientiously to depart or go below the Guidelines," and in another spot he said, "I am not going to dishonor the integrity the law commands by, in this case, going the way you want me to." Perez compares his case to *United States v. Panice*, 598 F.3d 426, 441–42 (7th Cir. 2010), in which this court concluded that the district judge might have "inadvertently" treated the guidelines range as presumptively reasonable even while acknowledging the guidelines to be advisory.

A district court cannot presume that a sentence within the guidelines range would be reasonable. *Nelson v. United States*, 555 U.S. 350, 352 (2009). This case, however, differs significantly from *Panice*. There we were concerned about the following statements: "I do not want to get to where I have to go here, but I have to go there," and defense counsel "had to deal with the statutory scheme that is presumptively reasonable." *Panice*, 598 F.3d at 441. Although the judge in Perez's case also said that he did not want "to do what I have to do," taken in context there is no way to view this as a mistaken view that it was the guidelines that were tying his hands.

In contrast with *Panice*, in Perez's case, far from characterizing the "statutory scheme" as "presumptively reasonable," see *Panice*, 598 F.3d at 441, the court went out of its way to note that it had "ignored the guidelines when I thought it was appropriate." But no judge is ever required to ignore the guidelines, and this judge expressly stated that he thought that for Perez "the Guidelines call it the right way." The judge went on to say that, although he would have preferred it if the circumstances had warranted a lower sentence, he could not conscientiously impose such a sentence given Perez's criminal record, current drug deals, and inability to learn from prior periods of incarceration. Fairly understood, the judge's statements demonstrate agreement with Perez's guidelines range, not a belief that in all situations the sentence imposed should presumptively fall within the guidelines range. There was thus no error on this basis.

Mitigating Arguments. Perez also urges that the district court failed to consider his principal arguments in mitigation: that his career-offender status overstates his criminal history given the "remoteness of his predicate offenses," and that the recommended range yielded an imprisonment range greater than necessary, in conflict with the parsimony rule of § 3553(a), given his status as a lowly "street level" dealer. We agree with the government, however, that the second of these points was not properly preserved. In the passage from the sentencing hearing transcript to which we are now referred on this point, defense counsel said, "Judge that is the context of the personal characteristics of defendant under 3553(a), which contradict the notion that 15.6 years is necessary to either protect society or reform this individual or deter him in the future or to deter others." This was not enough to alert the judge to an effort to raise Perez's argument on appeal—that sentencing a "street level" dealer as a career offender is not appropriate. District judges cannot be expected to address a lawyer's running commentary that only later, in an appellate brief, begins to look like a focused argument in mitigation. See *United States v. Cheek*, 740 F.3d 440, 455 (7th Cir. 2014); *United States v. Donelli*, 747 F.3d 936, 940 (7th Cir. 2014); *United States v. Jackson*, 547 F.3d 786, 795–96 (7th Cir. 2008).

Perez's other argument—that the convictions making him a career offender were remote—is either unexplained or unpersuasive (or both). Perez had qualifying and countable convictions for crimes committed in 1995, 1997, and 2000. From 1995 through February 2005 he was either facing pending charges, incarcerated, or under court supervision. By 2008 he and others in his gang were under investigation by the Chicago Police Department. We see no reason why the district court erred in rejecting the idea that these predicate convictions were unacceptably remote. The court concluded that Perez had "earned his career criminal status whether it was long ago or more recent and whether the deals were small." A career-offender sentence was appropriate, it thought, because Perez had several chances to change his life but did not learn anything from past incarceration and continued to reoffend. This explanation was reasonable and sufficiently detailed; Perez is not entitled to relief on this ground. See *United States v. Chapman*, 694 F.3d 908, 914 (7th Cir. 2012); *United States v. Gary*, 613 F.3d 706, 709 (7th Cir. 2010).

Inaccurate Information. The argument that Perez's counsel stressed at oral argument, and the one that gives us the greatest concern, relates to the accuracy of the information on which the court relied. At one key point, the court stated that Perez was prepared to "Sell drugs, sell crack and sell *guns*" during the offense of conviction. In fact, the April 2010 transaction involved only one gun that was thrown into the deal at the express request of the informant. (We note that Perez's criminal background is devoid of weapons offenses.) Perez argues that the circumstances here are akin those in *United States v. Durham*, 645 F.3d 883, 899–900 (7th Cir. 2011), where resentencing was

necessary when the sentencing court commented that the defendant's "prior involvement in violent offenses, with drugs and guns" factored into its sentence (even though the defendant had no prior history with offenses involving firearms).

We think that Perez has a good point. It is true that nothing in the record suggests that Perez placed a limit on the number of guns he would sell if he had more than one, or that he would not have sold the informant multiple guns if the informant had asked for them. But nothing supports the idea that Perez had a habit of selling guns either. The judge's use of the plural "guns" might have been harmless, if the record had otherwise reflected his awareness that Perez's criminal record did not include any gun offenses or that the judge was taking into account the accurate details of the April 2010 deal, but it does not. To the contrary, the judge described Perez as one of the worst of the worst, observing that he did "not get too many cases with this heavy a background." We find this hard to believe. Without the career-offender enhancement, Perez's criminal-history category was IV, reflecting nine points. His criminal history consisted of a number of low-level convictions for distribution of drugs, committed while he was addicted to heroin. The district court judge here has presided over drug conspiracies involving thousands of kilograms of cocaine, see, *e.g.*, *United States v. Ward*, 211 F.3d 356 (7th Cir. 2000), and so we can only assume that his statement in Perez's case was hyperbole.

Perez also argues that the district court based his career-offender status on an inaccurate assessment of his prior drug convictions. After the prosecutor described Perez as having "multiple serious drug convictions in the past," the court commented that the prosecutor "has those facts right." Technically speaking, this may have been accurate. Perez has *two* prior convictions for delivery of a controlled substance, one for a sale of $50 worth of crack in 1995 and the other for a sale in 1996. Initially, Perez was sentenced on the same day to probation for both crimes, but after he violated the conditions of his probation, he was sentenced to seven years for the 1995 drug offense. His sentence for the 1996 offense was unaffected. This was enough, however, to make the 1995 offense recent enough to incur criminal history points, and only crimes that incur points count for career-offender status. See U.S.S.G. §§ 4A1.1(a), 4A1.2(e), (k), 4B1.2(c). The prosecutor commented that Perez had "earned his 'career offender' status" because of his prior convictions without delving into the details of which convictions counted and which did not. We cannot tell if the district court's later comment, endorsing the prosecutor's statement, was supposed to mean that Perez had "earned" the career-offender status because of a horrendous record, or if it meant only that the probation service had accurately applied the guidelines. If the former, then it is unclear to us why this was the court's assessment of Perez's unfortunately common background. If the latter, then it does not help us understand why the court rejected Perez's argument that the guidelines overstated the significance of his criminal history.

Explanation for Sentence. That last point leads us to Perez's complaint that the district court did not explain its choice of the 188-month sentence adequately. Principally for the reasons we have already given, we agree with that criticism. The court did properly take into account a number of the factors mentioned in § 3553(a), including Perez's difficult upbringing with an absent father and drug-addicted mother, and the fact that he was now a father himself. The court also considered Perez's prior incarcerations, noting that none had given rise to any appreciable deterrent effect. But the court did not indicate that it was aware that the time Perez actually had served for his five-year and seven-year sentences was quite low—two and a half years and three years respectively. Escalating from that level to more than 15 years is a major step. We do not rule out the possibility that it could be justified, but we cannot find the justification in this record.

We VACATE Perez's sentence and REMAND for re-sentencing in accordance with this order.